**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KAREN SUE BOES,

       Petitioner,                          Civil No. 2:09-CV-12279
                                        HONORABLE PAUL D. BORMAN
v.                                      UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

       Respondent,

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

      Karen Sue Boes, ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her application, filed through her counsel Mark A. Satawa and Stuart G. Friedman, petitioner challenges her conviction for for first-degree felony murder, M.C.L.A. 750.316. For the reasons stated below, the Court will DENY the petition for writ of habeas corpus.

## I.  BACKGROUND

      Petitioner was convicted by a jury in Ottawa County Circuit Court of first-degree felony murder. Petitioner has provided a detailed statement of facts in her brief in support of the petition for writ of habeas corpus. Respondent has likewise provided a detailed factual summary of the case, which does not essentially conflict with petitioner's statement of facts. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Cristini v.*

1

*McKee,* 526 F. 3d 888, 894, n. 1 (6th Cir. 2008)("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations").  Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety.  Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).  Accordingly, this Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arises from the death of her fourteen-year-old daughter, who died of smoke inhalation from a fire at their home.  At trial, the prosecution presented evidence that the fire was fueled by an accelerant, such as gasoline; that it started in the hallway outside the victim's bedroom; and that the victim could not have started the fire and then retreated back into the bedroom where she died.
>
> *************************************************************
>
> In the instant case, the two expert witnesses presented by the prosecution agreed that the fire started in the hallway, rather than the victim's bedroom, and that the fire was necessarily fueled by an accelerant.  They explained their positions in detail and specifically testified that the fire was not accidental.  Although no evidence of an accelerant was discovered in the hallway, all of the expert witnesses, including one presented by defendant, acknowledged that a fire might consume all traces of an accelerant.  All of the experts searched for accidental causes of the fire, but none were found.
>
> *************************************************************
>
> With regard to defendant's responsibility for the fire, the evidence indicated that only defendant and the victim were in the house at the relevant time.  Defendant told witnesses that the victim was sleeping when she left the house at 8:55 a.m. and that she had entered the victim's bedroom and kissed her goodbye before leaving.  A passerby who noticed the fire called 911 five minutes later.  Several weeks before the fire, defendant told her husband that a gas can, which was ultimately found in the victim's bedroom, was missing.  Traces of gasoline were found on a chair in the master bedroom that defendant occupied by herself.  Moreover, the evidence showed that gasoline was poured around the victim's bedroom and an accelerant was used in the hallway outside the room, where the fire started.  One of plaintiff's experts testified that the victim could not have started the fire in the hallway and retreated

2

back into her room.

Furthermore, during police interviews and when speaking to her husband, defendant stated that she "could have" started the fire. She told numerous different versions of the events, and several witnesses heard her declare her hatred of the victim before the fire. Defendant also admitted that she had a violent streak directed toward the victim, and that she was upset on the morning of the fire. Moreover, within a week after the victim's funeral, defendant joked that she would be in jail.

*People v. Boes,* No. 248289, 1, 4 (Mich.Ct.App. December 21, 2004).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 474 Mich. 853, 702 N.W. 2d 578 (2005).

Petitioner subsequently filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* with the Ottawa County Circuit Court, which was denied. *People v. Boes,* No. 02-26455-FC (Ottawa County Circuit Court, February 13, 2008). The Michigan Court of Appeals denied petitioner's post-conviction appeal. *People v. Boes,* No. 290345 (Mich.Ct.App. March 19, 2009). While petitioner's post-conviction appeal was pending in the Michigan Supreme Court, petitioner filed a petition for writ of habeas corpus with this Court. This Court entered an opinion and order granting petitioner's motion to hold her habeas petition in abeyance pending the completion of state post-conviction proceedings by petitioner. The Court also administratively closed the case. *Boes v. Warren*, No. 09-12279, 2009 WL 1856511 (E.D. Mich. June 25, 2009). The Michigan Supreme Court subsequently denied petitioner leave to appeal. *People v. Boes,* 485 Mich. 974, 774 N.W.2d 903 (2009); *reconsideration den.* 485 Mich. 1105, 778 N.W.2d 225 (2010).

This Court subsequently reinstated the petition to the Court's active docket and permitted petitioner to file an amended habeas petition. *Boes v. Warren*, No. 09-12279, 2010 WL 5387524 (E.D. Mich. December 22, 2010). On September 21, 2012, petitioner filed a brief in support of the petition for writ of habeas corpus and respondent filed an answer on December 21, 2012.

Petitioner seeks a writ of habeas corpus on the following grounds:[1]

I. The trial court violated Ms. Boes' constitutional rights by admitting her involuntary and unknowing statements when she had not properly waived her right to counsel.

II. The trial court violated Petitioner's constitutional right to present a defense by refusing to admit expert testimony regarding the statements taken in this case and why such statements were untrustworthy.

III. Ms. Boes deserves a new trial to protect her constitutional rights because she is actually innocent of the charges. Recent reports and findings concerning fundamental flaws about the arson investigation approach followed in this case cast significant doubts about the factual integrity of the verdict.

IV. Both trial and appellate counsel violated Ms. Boes' Sixth Amendment right to effective assistance of counsel by failing to challenge the confession evidence and arson investigation.

V. There was insufficient evidence to convict Petitioner.

VI. The trial court violated Ms. Boes' constitutional right to presumption of innocence when it admitted photographs of Susan Boes' burned body.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable

---

[1] The Court is aware that petitioner raised only four of these claims in the brief in support of the petition for writ of habeas corpus. The petition for writ of habeas corpus, and not briefs or other documents, provides the basis for granting a writ of habeas corpus. *See Scott v. Hopkins,* 82 F. Supp. 2d 1039, 1050 (D. Neb. 1999). There is no indication that petitioner wishes to abandon any of the claims that she raised in her initial petition, accordingly, the Court will address all six of the claims raised by petitioner in her original and amended habeas petitions.

> determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas

5

court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

6

## III.  DISCUSSION

### A.  Claim # 1.  The involuntary statement claim.

Petitioner first contends that the trial court erred in failing to suppress her statements to the police on the ground that they were involuntarily made.

The Michigan Court of Appeals rejected petitioner's claim:

> After reviewing the totality of the circumstances, we are not left with a definite and firm conviction that the trial court erred in determining that defendant's statements were voluntary.  Defendant was forty-six years old and high school educated.  She had no formal experiences with the police, but she had contact with them related to the victim.  Although officers questioned her for more than eight hours, they gave her several breaks and allowed her to speak with her husband on two occasions.  Moreover, the most confrontational part of the interview, the polygraph interrogation, lasted for only a short time.  The evidence does not indicate that defendant was subjected to intensive, rapid-fire questioning over a long period.  Rather, she spent most of the day speaking to the police chief, who she knew from the community and with whom she admittedly felt comfortable.  Defendant even initiated further contact with him after being told the interviews were finished.

> Further, defendant was not detained before her making her statement, but voluntarily appeared to give it.  Defendant told the polygraph examiner that she was not on any medication, and her husband testified that she did not appear to be under the influence of medication.  Although she later claimed that she had taken Prozac and Valium, there was no evidence that defendant behaved as if she was under the influence of drugs or that her abilities were affected.  Moreover, defendant admitted that she felt fine when the interviews began, and there was evidence that she remained coherent and logical throughout the interviews, even when she became tired.  The interviewers did not deprive defendant of food, sleep, or medical attention, and never physically abused or threatened to abuse her.

> In sum, while the interviews were long and occurred the week after the victim's funeral, the totality of the circumstances supports the trial court's determination that the statements were freely and voluntarily made.  We therefore affirm the trial court's ruling in this regard.

*Boes,* Slip. Op. at 3.

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985).  The Due Process Clause

7

of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions

obtained by means "so offensive to a civilized system of justice that they must be condemned."

*Miller v. Fenton*, 474 U.S. 104, 109 (1985).  An admission is deemed to be coerced when the

conduct of law enforcement officials is such as to overbear the accused's will to resist.

*Ledbetter v. Edwards,* 35 F. 3d 1062, 1067 (6th Cir. 1994)(citing *Beckwith v. United States*, 425

U.S. 341, 347-48 (1976)).  An involuntary confession may result from psychological, no less

than physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89

(1991); *Miranda v. Arizona*, 384 U.S. 436, 448 (1966).

     In determining whether a confession is voluntary, the ultimate question for a court is

"whether, under the totality of the circumstances, the challenged confession was obtained in a

manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at

112.  These circumstances include:

> 1. police coercion (a "crucial element");
> 2. the length of interrogation;
> 3. the location of interrogation;
> 4. the continuity of the interrogation;
> 5. the suspect's maturity;
> 6. the suspect's education;
> 7. the suspect's physical condition and mental health;
> 8. and whether the suspect was advised of his or her *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

     All of the factors involved in the giving of the statement should be closely scrutinized.

*Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).  However, without coercive police activity,

a confession should not be deemed involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167

(1986).

     Based upon the totality of the circumstances in this case, it was objectively reasonable

for the Michigan Court of Appeals to hold that petitioner's statement to the police was voluntary. *See McCalvin v. Yukins,* 444 F. 3d 713, 720 (6th Cir. 2006). Petitioner was a forty six year old woman with a high school education. The evidence indicates that petitioner voluntarily arrived at the police station with her husband. Petitioner was not placed under arrest and was told by the police that she could leave at any time. Petitioner was advised of her *Miranda* rights. Following the police interview, petitioner was free to leave the police station without being arrested. *Boes,* Slip. Op. at 2 and n. 2. Although petitioner had been at the police station for eight hours, the police gave her several breaks and permitted her to speak with her husband at least twice. The most confrontational part of the interrogation lasted for only a short time and thre was no evidence that petitioner was subjected to intensive questioning over a long period of time. There was no evidence that the police physically assaulted petitioner or made any threats towards her, nor are there any allegations that the police withheld food, water, medical attention or bathroom breaks from petitioner. Although petitioner claims that she had taken Prozac and Valium, she did not appear to be under the influence of medication at the time of the interview and admitted that she felt fine when the interview began.

In the present case, even if there were some circumstances surrounding petitioner's interrogation which may have been somewhat troublesome, under the deference required by the AEDPA, and given the factors supporting a finding that petitioner's confession was voluntary, the decision of the Michigan Court of Appeals in finding petitioner's confession to have been voluntary was a reasonable application of federal law. *McCalvin,* 444 F. 3d at 720*; See also Payne v. Smith,* 207 F. Supp. 2d 627, 646 (E.D. Mich. 2002)(state court determination that petitioner's confession was voluntary did not warrant federal habeas relief, despite petitioner's

9

claim of coercive police activity, where petitioner was forty four years old at the time he made his statement, had two prior convictions, and was thus familiar with criminal procedures, was not deprived of necessary nourishment, medical care, sleep, or other essentials while in custody, and was advised of his *Miranda* rights by police prior to being questioned and waived those rights).

Moreover, assuming that petitioner's statements to the police should have been suppressed, petitioner is unable to establish that she is entitled to habeas relief in light of the fact that admission of the statements against her at trial was harmless error at most. Harmless-error analysis applies to coerced or involuntary confessions. *Arizona v. Fulminante*, 499 U.S. at 295. In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

In the present case, there was sufficient evidence absent petitioner's statement to the police to sustain her convictions.  Several witnesses testified to the volatile relationship between petitioner and the victim and indicated that petitioner had told them that she hated the victim. Petitioner had also been verbally abusive to the victim in front of a number of people. (See e.g. Tr. 2/11/03, pp. 925-27, Tr. 2/13/03, pp. 1249-51, 1255, Tr. 2/14/03, pp. 821-23, 836-37). Petitioner told one witness that she wished that the victim had never been born. (Tr. 2/5/03, pp. 240-44).  Petitioner told another witness the day before the fire that she hated the victim and had a "violent streak" directed towards her. (Tr. 2/14/03, pp. 1356-58).  Several witnesses

indicated that the victim had never threatened suicide or the desire to destroy property. (Tr. 2/11/03, pp. 821-23, 836-37, 840, 935, Tr. 2/13/03, pp. 1249-51, 1255).  The victim's supervisor from work testified that on the day before her death there was nothing unusual about her demeanor. (Tr. 2/11/03, p. 877).  In the months leading up to her death, the victim repeatedly told her boyfriend's mother Michelle Batema that she was afraid that petitioner was going to kill her. (Tr. 2/11/03, pp. 933-34).  Michelle Batema testified that when petitioner phoned her after the fire to tell her the victim was dead, it sounded like she was delivering good news. (Tr. 2/11/03, pp. 938-39).  Sergeant Mike Harris testified that he interviewed petitioner the day of the fire and although she began "wailing" she showed no tears.  Significantly, Sergeant Harris asked petitioner if she was familiar with a gasoline can but did not tell her that a gasoline can had been recovered from the victim's bedroom.  Petitioner informed him that a gasoline can had been missing for several weeks and then asked, "you didn't find it in her bedroom, did you?" (Tr. 2/11/03, pp. 974-76).  Traces of gasoline were also found in a chair in the master bedroom that was occupied only by petitioner. (Tr. 2/5/03, p. 79, Tr. 2/6/03, pp. 459-60).  Finally, and most importantly, petitioner also told her husband that she could have set the fire. (Tr. 2/5/03, p. 128).       In light of the additional evidence against petitioner in this case, including an incriminating statement that she made to her husband, the admission of petitioner's statements to the police was harmless error at most.  Petitioner is not entitled to relief on her first claim.


**B. Claim # 2.  The right to present a defense claim.**

Petitioner next claims that the trial court violated her right to present a defense by

refusing to allow her to present an expert witness to establish that she had falsely confessed to murdering her daughter.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude

12

potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

Petitioner is not entitled to relief on her claim because the state trial court reasonably determined that petitioner was not deprived of her right to present a defense by the exclusion of proposed expert testimony concerning false confessions or coercive police interrogation techniques.  In *Brown v. Horell*, 644 F.3d 969, 982-83 (9th Cir. 2011), the Ninth Circuit held that the state court's exclusion of Dr. Richard Ofshe from testifying as an expert witness regarding the interrogation methods used by the police to obtain the petitioner's confession was not contrary to or an unreasonable application of clearly established Supreme Court precedent, so as to entitle the petitioner to habeas relief.   In so ruling, the Ninth Circuit noted that the Supreme Court had never squarely addressed whether a state trial court's exercise of its discretion to exclude expert testimony violated a criminal defendant's constitutional right to present relevant evidence, nor had any Supreme Court cases clearly established "a controlling legal standard" for evaluating a trial court's discretionary decisions to exclude expert testimony. *Id.,* at 983 (quoting *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009)).

Other courts have denied habeas relief to habeas petitioners who claimed that their right to present a defense was violated when they were not permitted to call an expert witness to testify about false confessions or coercive interrogation methods. *See Heiden v. Trujillo,* 174 F. App'x. 412, 415 (9th Cir. 2006)(state court's determination that trial court did not violate petitioner's due process rights by excluding expert testimony bearing on his confession was not

13

contrary to, nor an unreasonable application of clearly established federal law, and thus did not warrant federal habeas relief, where trial judge enunciated several reasons to doubt reliability of expert's testimony, including that expert was not present during confession, had not viewed available videotape of confession, and had never directly spoken to participants)*; Loza v. Mitchell*, 705 F. Supp. 2d 773, 787-91 (S.D. Ohio 2010)(exclusion of clinical psychologist's testimony regarding the credibility and reliability of defendant's confession to murders did not violate petitioner's Fifth, Sixth, Eighth, or Fourteenth Amendment rights, where the jury had the opportunity to view a videorecording of the entire interview which culminated in the confession); *Ritt v. Dingle*, 142 F. Supp. 2d 1142, 1145 (D. Minn. 2001)(state court's exclusion in murder trial of expert testimony concerning police detective's interrogation technique was not contrary to or unreasonable application of clearly established federal law, where petitioner was allowed to present jury videotape of her interrogation by detective, which showed circumstances of her confession).

Moreover, a number of federal courts on direct review of federal criminal convictions have likewise excluded expert testimony concerning false or coerced confessions on various grounds. *See U.S. v. Antone,* 412 F. App'x. 10, 11 (9th Cir. 2011)(district court's decision to exclude defense expert's testimony regarding false confessions because of danger that it would usurp jury's function of resolving relative credibility of witnesses was squarely within its discretion); *U.S. v. Benally,* 541 F.3d 990, 994-95 (10th Cir. 2008)(prejudicial effect of expert testimony on false confessions substantially outweighed its probative value; expert testimony would inevitably encroach upon jury's exclusive function to make credibility determinations, and relevance of testimony was minimal since expert did not examine defendant and was not

14

going to discuss him or circumstances surrounding his confession); *U.S. v. Dixon,* 261 F.

App'x. 800, 804-05 (5th Cir. 2008)(district court did not abuse its discretion in excluding

defense expert's proffered testimony generally concerning phenomenon of false confessions;

witness had not examined defendant and was not prepared to opine on whether his confessions

were false); *U.S. v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003)(proposed testimony by Dr. Ofshe

that defendant likely gave a false confession, was based on insufficient facts or data to be

admissible as expert testimony in drug prosecution, where Dr. Ofshe's proposed testimony, that

false confessions could occur, was not connected to particulars of defendant's case); *See also*

*U.S. v. Jacques,* 784 F. Supp. 2d 59, 63 (D. Mass. 2011)(expert witness's proffered testimony

that defendant's confession was unreliable amounted to an improper opinion that defendant was

not guilty, requiring its exclusion).

   The Court is aware that two federal appeals courts reversed district court decisions to

exclude expert testimony regarding a defendant's susceptibility to give a false confession. *See*

*United States v. Hall*, 93 F.3d 1337 (7th Cir.1996); *United States v. Shay*, 57 F.3d 126 (1st Cir.

1995).  Other appellate courts have noted, however, that in these cases the expert witness was

prepared to testify that the defendants had a specific mental or psychological condition that

made them susceptible to making a false confession. *Benally,* 541 F.3d at 996; *Dixon,* 261 F.

App'x. at 805, n. 4.  Likewise, in *United States v. Belyea,* 159 F. App'x. 525, 529-30 (4th Cir.

2005), the Fourth Circuit remanded a case to a district court because the district court had failed

to conduct a particularized *Daubert* inquiry with regards to the admission of expert testimony

on false confessions.  This case would also not assist petitioner "because it was decided

principally on the basis of the district court's inadequate review of the expert's proffer."

*Benally,* 541 F.3d at 996.

In any event, the three cited cases above involve direct appeals from federal criminal convictions.  A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F.3d 524, 530-531 (6th Cir. 2001).  A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* Circuit Court precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews,* 132 S. Ct. 2148, 2155 (2012).

In the present case, petitioner is not entitled to habeas relief on her second claim because there is no clearly established Supreme Court law which holds that a criminal defendant is entitled to present expert testimony on the issue of false or coerced confessions.  Given the lack of holdings by the Supreme Court on the issue of whether a criminal defendant is entitled to present expert testimony on the issue of false confessions or coercive police interrogation tactics, the state court's rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).  Moreover, because numerous federal courts on both direct review of federal criminal convictions and on habeas review of state court convictions have ruled that a criminal defendant's rights were not violated by the exclusion of such expert testimony, petitioner is not entitled to habeas relief because the cases cited above clearly show

16

that "fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court's precedents. *Harrington,* 131 S. Ct. at 786. The mere fact that three circuit courts have ruled otherswise would not entitle petitioner to relief. A disagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established for federal habeas purposes. *See Miller v. Colson*, 694 F.3d 691, 698 (6th Cir. 2012); *cert. den.* 133 S. Ct. 2739 (2013). Finally, in light of the fact that the jurors were able to watch the videotaped interrogations in their entirety and petitioner's counsel was able to cross-examine the detectives who conducted the interrogations, petitioner was able to present her defense to the jury that her confession was unreliable. Petitioner is not entitled to habeas relief on her second claim.

### C. Claim # 3. The actual innocence claim.

Petitioner next claims that she has newly discovered evidence from two fire experts that would establish her innocence of the arson and the murder.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases).

17

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55.  Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context.  Petitioner is therefore is not entitled to relief for her third claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 F. App'x. 709, 711 (6th Cir. 2007).

**D.  Claim # 4.  The ineffective assistance of trial and appellate counsel claims.**

Petitioner next contends that she was deprived of the effective assistance of trial and appellate counsel.

Respondent initially contends that petitioner's ineffective assistance of trial counsel claim is procedurally defaulted because she did not properly exhaust it in the state courts and no longer has a remedy with which to exhaust this claim.

A state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971).  A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in both the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Mohn v. Bock,* 208 F. Supp. 2d 796, 800

18

(E.D. Mich. 2002). The exhaustion doctrine, in the context of habeas cases, turns upon an inquiry of whether there are available state court procedures for a habeas petitioner to exhaust his claims. *See Adams v. Holland,* 330 F.3d 398, 401 (6th Cir. 2003).

In the present case, petitioner only raised an ineffective assistance of appellate counsel claim in her motion for relief from judgment and supplemental brief in support of the motion for relief from judgment. [2] Petitioner appears to have added ineffective assistance of trial counsel claims in the post-conviction appeal that she filed with the Michigan appellate courts.

In order to properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his post-conviction motion before the state trial court and in his post-conviction appeal to the state's appellate courts. *See Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009).

A number of cases have suggested that a habeas petitioner's failure to present an issue before a state trial court in a motion for post-conviction relief precludes a finding that the issue has been exhausted for purposes of habeas review, even if that issue is later presented on appeal to the state's appellate courts from the denial of the post-conviction motion. *See Lindquist v. Gardner*, 770 F.2d 876, 878 (9th Cir. 1985)(Idaho prisoner did not exhaust his state remedies by presenting his claim to the Idaho Supreme Court in an original habeas proceeding, where prisoner had a post-conviction remedy under the Uniform Post-Conviction Procedure Act which he should have pursued in the court in which he was convicted and sentenced); *Drake v. Wyrick*, 640 F.2d 912, 916 (8th Cir. 1981)(petitioner failed to exhaust claim, where he did not assert claim in his post-conviction motion, raising it for the first time on the appeal of the denial

---

[2] *See* this Court's Dkt. ## 17-23, 17-24.

19

of his post-conviction motion); *Lesure v. Atchison,* 891 F. Supp. 2d 920, 925-26 (N.D. Ill. 2012)(petitioner's claim was procedurally defaulted, where petitioner failed to present claim in his post-conviction petition before the state trial court); *Middlebrook v. Carroll,* 470 F. Supp. 2d 411, 420 (D. Del. 2007)(habeas petitioner procedurally defaulted his claim where petitioner presented claim to state appellate court on post-conviction appeal without first presenting it to state trial court in his motion for post-conviction relief); *Geraci v. Senkowski*, 23 F. Supp. 2d 246, 265-266 (E.D.N.Y. 1998)(claim unexhausted where petitioner did not present claim in either of his two post-conviction motions, even though claim raised on appeal to the New York Court of Appeals); *McLee v. Angelone*, 967 F. Supp. 152, 154-155 (E.D. Va. 1997)(prisoner failed to exhaust claim that the Virginia Department of Corrections arbitrarily denied his parole eligibility, where although he raised the claim in his reply briefs to his state habeas petition, the claim was not included in his original or amended state habeas petition, and was not addressed by the Department of  Corrections or the Virginia Supreme Court); *Sanabria v. Morton*, 934 F. Supp. 138, 140-141 (D.N.J. 1996)(insufficiency of evidence claim not exhausted when claim raised for the first time in a supplemental postconviction relief petition for certification to the state Supreme Court).

Numerous judges in this district have held that a habeas petitioner's claims were not properly exhausted when they were not presented in the petitioner's post-conviction motion for relief from judgment before the trial court and were raised only for the first time in the application for leave to appeal to the Michigan Court of Appeals. *See Ceasar v. Warren,* No. 06–CV–15294, 2009 WL 1543327, at 4 (E.D. Mich. June 2, 2009)*; West v. Jones*, No. 06–CV–12057, 2008 WL 1902063, at 11–12 (E.D. Mich. April 29, 2008); *Dorch v. Smith*, No.

20

01–CV–71206–DT, 2002 WL 32598987, at 19 (E.D. Mich. Sept.11, 2002); *aff'd* 105 F. App'x. 650 (6th Cir. 2004); *Kincade v. Stegall,* No. 99–CV–76350–DT; 2001 WL 279751, at 5 (E.D. Mich. January 23, 2001).

Moreover, although petitioner may have made a brief reference to trial counsel's ineffectiveness in her motion for relief from judgment, she did not develop this issue or raise it as an independent claim before the trial court. A habeas petitioner's "sporadic and undeveloped allusions" to a claim do not satisfy the exhaustion requirement. *See Vasquez v. Jones,* 496 F. 3d 564, 568 (6th Cir. 2007).

Petitioner's ineffective assistance of trial counsel claims are unexhausted, because she failed to present them in her motions for relief from judgment with the trial court.

Unfortunately, petitioner no longer has any available state court remedies with which to exhaust these claims. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico,* 258 F. App'x. 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). Petitioner has no remaining state court remedies with which to exhaust these ineffective assistance of trial counsel claims. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at

2:09-cv-12279-PDB-DAS   Doc # 24   Filed 10/03/13   Pg 22 of 34   Pg ID 4061

1196, n. 3.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In the present case, petitioner has failed to offer any reasons for her failure to present her ineffective assistance of trial counsel claims in her motion for relief from judgment before the trial court.  Moreover, although ineffective assistance of appellate counsel might excuse petitioner's failure to raise these claims on her direct appeal, it does not excuse petitioner's own failure to properly exhaust these claims in her post-conviction motion. *See Gadomski v. Renico*, 258 F. App'x. at 784.  Petitioner can also not rely on any alleged ineffective assistance of post-conviction counsel as cause because there is no constitutional right to an attorney in post-conviction proceedings. *See Coleman,* 501 U.S. at 752-53, *See also Landrum v. Mitchell*, 625 F.3d 905, 919 (6th Cir. 2010).  Because petitioner has not demonstrated any cause for her

22

procedural default, it is unnecessary to reach the prejudice issue regarding her ineffective

assistance of trial counsel claims. *Smith*, 477 U.S. at 533.

   Additionally, petitioner has not presented any new reliable evidence to support any

assertion of innocence which would allow this Court to consider her ineffective assistance of

trial counsel claims as a ground for a writ of habeas corpus in spite of the procedural default.

Petitioner's sufficiency of evidence claim (Claim # 5, *infra*) is insufficient to invoke the actual

innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677

(E.D. Mich. 2003).  Although petitioner claims that she has two experts who would challenge

the findings by the state's expert Dr. DeHaan that the fire started in the hallway as opposed to

the victim's bedroom, petitioner has failed to attach these experts' reports to her petition or to

her brief in support of her petition.  In any event, these experts would at best merely impeach

Dr. DeHaan's findings.  Impeachment evidence does not provide sufficient evidence of actual

innocence to excuse a procedural default or other procedural bar. *See Calderon v. Thompson*,

523 U.S. 538, 563 (1998)(newly discovered impeachment evidence, which is "a step removed

from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence);

*Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will

seldom, if ever," establish actual innocence); *See also Harris v. Stegall,* 157 F. Supp. 2d 743,

750-51 (E.D. Mich. 2001)(state trial court's allegedly erroneous exclusion of victim's

statements to police was insufficient to justify invoking fundamental miscarriage of justice

exception to procedural default rule on federal habeas review when statements were merely

impeaching and did not provide basis for any claim of actual innocence).

   Because petitioner has not presented any new reliable evidence that she is innocent of

these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's

ineffective assistance of trial counsel claims on the merits. *See Johnson v. Smith*, 219 F. Supp.

2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for the default of her ineffective

assistance of trial counsel claims, she would be unable to satisfy the prejudice prong of the

exception to the procedural default rule, because her claims would not entitle her to relief.  The

cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See*

*Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007).   For the reasons stated by the Assistant

Michigan Attorney General in his answer to the petition for writ of habeas corpus, petitioner has

failed to show that her ineffective assistance of trial counsel claims have any merit.  This

portion of petitioner's fourth claim is procedurally barred.

Petitioner further claims that appellate counsel was ineffective for failing to raise her

second and third claims and her ineffective assistance of trial counsel claims on her appeal of

right.

It is well-established that a criminal defendant does not have a constitutional right to

have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S.

745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every 'colorable' claim suggested by a client
> would disserve the ... goal of vigorous and effective advocacy.... Nothing in the
> Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good

arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in

24

a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations

omitted).

> The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington,*
> 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a
> particular claim[on appeal], but it is difficult to demonstrate that counsel was
> incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

> Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th

Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of

'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."

*Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when

ignored issues are clearly stronger than those presented will the presumption of effective

assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir.

2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by

omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial

record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d

849, 870 (E.D. Mich. 2003).

> Petitioner has failed to show that appellate counsel's performance fell outside the wide

range of professionally competent assistance by omitting her second and third claims and the

ineffective assistance of trial counsel claims that she raises as part of her fourth claim.

Appellate counsel filed a fifty page appellate brief which raised three claims, which now make

up petitioner's first, fifth, and sixth claims. [3]  Petitioner has not shown that appellate counsel's strategy in presenting these three claims and not raising other claims was deficient or unreasonable.  Moreover, although petitioner claims that a professor from the University of Michigan Law School had contacted appellate counsel and offered him the resources of the law school and recommended that he raise the additional claims that petitioner contends should have been raised, petitioner has never provided either the state courts or this Court with an affidavit from this professor. [4]  Conclusory allegations of ineffective assistance of appellate counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  Finally, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, petitioner's second and third claims and his ineffective assistance of trial counsel claim are not "dead bang winners." Because these claims lacked merit, petitioner has failed to show that she was deprived the effective assistance of appellate counsel.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Finally, to the extent that petitioner claims in her brief in support of her petition that the trial court erred in denying her  an evidentiary hearing on the ineffective assistance of appellate counsel claim that she raised in her post-conviction motion, she would not be entitled to habeas relief.

This Court notes that "[t]he Sixth Circuit consistently [has] held that errors in

---

[3]  *See* Defendant-Appellant's Brief on Appeal [A portion of this Court's Dkt. # 17-19].

[4]  The professor, Bridget McCormick, is now a Michigan Supreme Court Justice.

post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F.3d at 853.  Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F.3d at 681.  The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)).  The denial of an evidentiary hearing by a state court on post-conviction review thus does not state a claim upon which habeas relief can be granted. *See e.g. Cornwell v. Bradshaw,* 559 F.3d 398, 411 (6th Cir. 2009).  Because the petitioner sought an evidentiary hearing with respect to the ineffective assistance of appellate counsel claim that she raised in her post-conviction motion, the failure by the state courts to grant her an evidentiary hearing on this claim would not entitle her to relief.  Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel even on direct appeal. *See Hayes v. Prelesnik,* 193 F. App'x. 577, 584-85 (6th Cir. 2006).  Accordingly, petitioner is not entitled to habeas relief on her forth claim.

### E.  Claim # 5.  The insufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to support her conviction for felony murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Petitioner initially contends that there was insufficient evidence to establish that the victim's killing occurred during the commission of an arson, so as to support her conviction for felony murder.

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d at 789(citing to *People v. Carines*, 460 Mich. 750, 759, 597 N.W. 2d 130 (1999)).

Under Michigan law, the elements of arson of a dwelling house are that: (1) a dwelling house was burned; (2) by, or at the urging of, or with the assistance of the defendant; and (3) the fire was willfully or maliciously set. *See Gardner v. Kapture,* 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003)(citing *People v. Lindsey*, 83 Mich. App. 354, 355, 268 N.W. 2d 41 (1978)).

There was sufficient evidence for a rational trier of fact to conclude that the underlying felony of arson had been comitted so as to support petitioner's conviction for felony murder. As the Michigan Court of Appeals noted in rejecting this portion of petitioner's claim, *See Boes,* Slip. Op. at 4, the prosecution's two expert witnesses testified that the fire started in the hallway, rather than the victim's bedroom, and that the fire was fueled by an accelerant and was not accidental.  Although no evidence of an accelerant was found in the hallway, all of the expert witnesses, including petitioner's own expert, indicated that a fire might consume all traces of an accelerant.  In addition, samples of carpeting from the victim's room were tested and found to contain gasoline.  Finally, a gasoline can was recovered from the victim's

29

bedroom.  When viewed in a light most favorable to the prosecution, the evidence was

sufficient for a rational trier of fact to conclude that the fire in this case was intentionally set.

Petitioner next contends that there was insufficient evidence to establish that she started

the fire which caused the victim's death.  The Michigan Court of Appeals rejected this portion

of petitioner's claim:

> With regard to defendant's responsibility for the fire, the evidence indicated that
> only defendant and the victim were in the house at the relevant time.  Defendant
> told witnesses that the victim was sleeping when she left the house at 8:55 a.m. and
> that she had entered the victim's bedroom and kissed her goodbye before leaving.
> A passerby who noticed the fire called 911 five minutes later.  Several weeks before
> the fire, defendant told her husband that a gas can, which was ultimately found in
> the victim's bedroom, was missing.  Traces of gasoline were found on a chair in the
> master bedroom that defendant occupied by herself.  Moreover, the evidence
> showed that gasoline was poured around the victim's bedroom and an accelerant
> was used in the hallway outside the room, where the fire started.  One of plaintiff's
> experts testified that the victim could not have started the fire in the hallway and
> retreated back into her room.
>
> Furthermore, during police interviews and when speaking to her husband, defendant
> stated that she "could have" started the fire.  She told numerous different versions
> of the events, and several witnesses heard her declare her hatred of the victim before
> the fire.  Defendant also admitted that she had a violent streak directed toward the
> victim, and that she was upset on the morning of the fire.  Moreover, within a week
> after the victim's funeral, defendant joked that she would be in jail.

*Boes,* Slip. Op. at 4.

In the present case, there was strong evidence which established petitioner's identity as

the person who started the fire which caused the victim's death.  First, there was strong

circumstantial evidence which linked petitioner to the crime.  Circumstantial evidence alone is

sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude

every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir.

2000)(internal quotations omitted).  Identity of a defendant can be inferred through

30

circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

Petitioner stated that she left the house at 8:55 a.m.  Five minutes later, a person noticed the

house on fire.  Petitioner told numerous people that she hated the victim and even informed one

person the day before the fire that she had a "violent streak" towards her.  Traces of gasoline

were discovered on a chair in a master bedroom that had been occupied by petitioner.  Several

persons stated that petitioner did not appear upset or sad after the victim's death.  Significantly,

Sergeant Harris asked petitioner if she was familiar with a gas can but did not tell her that a

gasoline can had been recovered from the victim's bedroom.  Petitioner replied that a gasoline

can had been missing for several weeks and then asked, "you didn't find it in her bedroom, did

you?"  In the present case, petitioner's animosity towards the victim, the fact that she possessed

information about the arson and the killing that only the perpetrator himself or herself would

have known, and that she had been in contact with gasoline would permit a rational trier of fact

to conclude that petitioner had committed the arson and the murder in this case, so as to support

her convictions. *See Saxton v. Sheets,* 547 F.3d 597, 606 (6th Cir. 2008).  Finally, there was no

evidence that the victim had been suicidal or had expressed an intent to destroy property.

In addition to this evidence, petitioner told both the police and her husband that she may

have killed the victim.  "[A]n admission by the accused identifying himself as the person

involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by

independent evidence." *United States v. Opdahl*, 610 F.2d 490, 494 (8th Cir. 1979); *See also Sok

v. Romanowski,* 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008)(evidence sufficient to establish

petitioner's identity as armed robber where his admissions placed him at the location of the

crime).  Petitioner's admissions of guilt were sufficient evidence to establish her guilt as the

murderer.

Because there were multiple pieces of evidence to establish petitioner's identity as the perpetrator of arson and the murder, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F.3d 908, 919-21 (6th Cir. 2012).

### F.  Claim # 6.  The claim involving the admission of photographs of the victim.

Petitioner finally contends that the trial court improperly admitted photographs of the victim's body into evidence.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Petitioner's claim that the trial court admitted photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g. Franklin v. Bradshaw,* 695 F.3d 439, 456-57 (6th Cir. 2012); *cert. den. sub nom Franklin v. Robinson,* 133 S. Ct. 1724 (2013); *Cooey v. Coyle,* 289 F.3d 882, 893-94 (6th Cir. 2002).

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's

constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

33

**IV.  CONCLUSION**

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman                              
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 3, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 3, 2013.

s/Deborah Tofil                              
Case Manager